**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **THOMAS EVOY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 05 C 5113** |
| | ) | |
| **ILLINOIS STATE POLICE and** | ) | |
| **LEONARD STALLWORTH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Thomas Evoy has sued his employer, the Illinois State Police, and his commanding officer, Leonard Stallworth. Evoy alleges that the defendants discriminated against him based on a disability and his age and retaliated against him for opposing unlawful employment actions in violation of the Americans with Disabilities Act and the Age Discrimination in Employment Act (Counts 1 & 2); interfered with his exercise of rights under the Family and Medical Leave Act (Count 3); retaliated against him for opposing employment actions made unlawful under Title VII of the Civil Rights Act of 1964 (Count 4); and intentionally inflicted emotional distress upon him (Count 5). Defendants have moved to dismiss each claim except the FMLA claim and have also moved to strike certain aspects of Evoy's request for damages.

## Facts

Evoy alleges that he was hired by the ISP in 1984 and currently serves as a Master Sergeant. He says that during his employment, he was diagnosed with a disability (the nature of

which his complaint does not disclose) and that the ISP was aware of this. As a result of the disability, Evoy alleges, he was granted intermittent FMLA leaves.

Starting in late 2002, Evoy contends, he was placed on "sick time proof status" by Lieutenant Stallworth, his commanding officer, and was required to verify each absence with medical documentation. Evoy says he objected to this on the ground that other officers, who unlike him were women, members of racial minorities, and/or non-disabled, were not subjected to similar requirements even though they used at least as much sick leave as Evoy did.

Evoy alleges that in October 2002, he filed an internal complaint, alleging discrimination based on race, gender, and disability, and that in March 2003 the director of the ISP found that the "proof status" requirement had been unfairly applied to Evoy and that Stallworth's order would be rescinded. Despite this, Evoy alleges, Stallworth insisted on documentation when Evoy took sick leave in September 2003. Evoy says he complained about this internally and that as a result, Stallworth removed him from "proof status." Shortly thereafter, Evoy says, he learned that an internal complaint about his use of sick leave had been filed, likely by Stallworth. This allegedly resulted in interference with Evoy's previously approved secondary employment and in the denial of a requested transfer to a different ISP district.

In January 2004, Evoy alleges, he filed another internal complaint, alleging retaliation and age discrimination; Evoy says this complaint was partially upheld by the ISP's director in July 2004. However, an administrative proceeding was initiated against Evoy in September 2004 based on his use of sick leave time. In February 2005, Evoy was recommended for discharge, and in May 2005, he was suspended without pay pending discharge.

On May 17, 2005, Evoy filed a charge of discrimination with the EEOC. A copy of the

charge is attached to Evoy's complaint in this case. In the narrative section of the charge, Evoy alleged discrimination based on age and disability in violation of the ADEA and ADA, and in retaliation for filing discrimination complaints, again in violation of the ADEA and ADA. In the narrative, he stated, among other things, that "[i]n 2002, I filed an internal complaint of discrimination and in January 2004, I filed an internal complaint of retaliation due to my complaining of age and disability discrimination." Compl., Ex. A. In addition to the narrative section, the charge form includes a series of boxes under the heading "DISCRIMINATION BASED ON (Check appropriate box(es).)." Evoy checked off the boxes for retaliation, age, and disability. *Id.*

## Discussion

Defendants have moved to dismiss Counts 1, 2, 4, and 5 of Evoy's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. They argue that Evoy's claims of discrimination and retaliation under the ADA and ADEA that arose before January 1, 2004 are barred by the Eleventh Amendment; that any claims under the ADA and ADEA that arise from actions before July 23, 2004 are time-barred; that Evoy cannot assert a Title VII claim because he did not make that claim in his EEOC complaint; that Stallworth is not a proper defendant on the ADA, ADEA, and Title VII claims; and that Evoy's claim for intentional infliction of emotional distress is preempted by the Illinois Human Rights Act and in any event is time-barred to the extent it arises from actions before September 6, 2003; and that various elements of the damages Evoy requests are not recoverable. In assessing defendants' motion, the Court reads the complaint liberally and may dismiss a claim only if Evoy can prove no set of facts consistent with his allegations that would entitle him to

relief. *See, e.g., Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984); *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

1.     **ADA and ADEA claims - Eleventh Amendment**

The ISP has moved to dismiss Evoy's ADA and ADEA claims to the extent they arose before January 1, 2004, contending that the claims are barred by the Eleventh Amendment.  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by the Citizens and Subjects of any Foreign State." U.S. Const., amend. 11.  Despite this provision's language barring suits by a citizen of one state against a different state, the Supreme Court has consistently held that it extends to suits filed by a citizen in federal court against his own state.  *See, e.g., Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 72-73 (2000).  A state agency like ISP is treated as the state for purposes of the Eleventh Amendment.  *See, e.g., Kroll v. Bd. of Trustees of Univ. of Ill.,* 934 F.2d 904, 907 (1991).

There are two recognized exceptions to a state's Eleventh Amendment immunity.  First, Congress may abrogate the states' immunity under section five of the Fourteenth Amendment. *See Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363 (2001) (citing *Kimel,* 528 U.S. at 73).  Second, a state may waive its immunity and consent to suits by private citizens. *Kimel,* 528 U.S. at 73.

The Supreme Court has held that Congress' attempts in the ADEA and in the portion of the ADA at issue here to abrogate the states' Eleventh Amendment immunity were invalid exercises of Congress' section five power.  *Kimel,* 528 U.S. at 82-83 (ADEA); *Garrett,* 531 U.S. at 374 (ADA).  Evoy contends, however, that Illinois has waived its Eleventh Amendment

immunity as to both ADA and ADEA suits.

Illinois adopted a statute, effective January 1, 2004, which provides that

(a)  An employee, former employee, or prospective employee of the State who is aggrieved by any conduct or action or inaction of the State that would constitute a violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. 621 et seq., as amended, if committed by an employer covered by that Act may bring an action under the Age Discrimination in Employment Act of 1967 against the State in State circuit court or federal court.

...

(d)  An employee, former employee, or prospective employee of the State who is aggrieved by any conduct or action or inaction of the State that would constitute a violation of the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 et seq., as amended, if committed by an employer covered by that Act may bring an action under the Americans with Disabilities Act of 1990 against the State in State circuit court or federal court.

745 ILCS 5/1.5(a), (d).  This statute was adopted as an amendment to the State Lawsuit Immunity Act, 745 ILCS 5/1.  *See* Ill. Pub. Act 93-414, § 5.  The Lawsuit Immunity Act, as amended by section five of Public Act 93-414, reads as follows:  "[e]xcept as provided in the Illinois Public Labor Relations Act, the Court of Claims Act, and the State Officials and Employees Ethics Act, the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1.

Though 745 ILCS 5/1.5, by its terms, permits an aggrieved employee to bring an action against the State for *any* action that would violate the ADEA or ADA, the ISP asserts that allowing Evoy to pursue claims for actions that arose before the statute's effective date of January 1, 2004 would constitute an impermissible retroactive application of the statute's waiver of Illinois' immunity from suit.

Two courts in this District and one in the Southern District of Illinois have considered

this question, and all three have concluded that section 1.5 waives Illinois' Eleventh Amendment immunity only as to suits involving conduct that occurred after its effective date.  *See Holliday v. WSIE 88.7 FM Radio Station,* No. 04-CV-0237-MJR, 2005 WL 3312633, at *3 (S.D. Ill. Dec. 7, 2005) (Reagan, J.); *Blalock v. Ill. Dep't of Human Servs.,* 349 F. Supp. 2d 1093, 1096 (N.D. Ill. 2004) (Bucklo, J.); *Bottoms v. Ill. Dep't of Human Servs.,* No. 03 C 1881, 2004 WL 1403911, at *3 (N.D. Ill. June 22, 2004) (Plunkett, J.).[1]  The courts in each of these cases addressed the issue pursuant to the retroactivity analysis adopted by the United States Supreme Court in *Landgraf v. USI Film Prods.,* 511 U.S. 244 (1994), and subsequently adopted by the Illinois Supreme Court in *Commonwealth Edison Co. v. Will Cty. Collector,* 196 Ill. 2d 27, 39, 749 N.E.2d 964, 972 (2001).  Though this Court agrees with the mode of analysis applied by our colleagues in *Holliday, Blalock* and *Bottoms,* we respectfully disagree with the conclusions reached by the courts in those cases.

In *Landgraf,* the Court assessed whether the Civil Rights Act of 1991, which for the first time authorized recovery of compensatory and punitive damages for violations of Title VII, as well as a jury trial for cases in which such damages are claimed, applied to a suit involving conduct that predated the Act's adoption.  The Court acknowledged the tension between two "seemingly contradictory" rules of statutory construction:  the rule that "'a court is to apply the law in effect at the time it renders its decision,'" *id.* at 264 (quoting *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711 (1974)), and "the axiom that 'retroactivity is not favored in the law,' and its interpretive corollary that 'congressional enactments and administrative rules will

---

[1]  Defendants point out that there is a fourth case, *Garcia v. Ill. Dep't of Children & Family Servs.,* No. 04 C 3906, 2005 WL 936851 (N.D. Ill. Apr. 13, 2005), but the immunity abrogation issue was not disputed by the plaintiff in that case.  *See id.* at *1.

not be construed to have retroactive effect unless their language requires this result.'" *Id.* (quoting *Bower v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988)). The Court noted that "the presumption against retroactive legislation is one that is deeply rooted in our jurisprudence," *id.,* and it reasserted its traditional disfavor of retrospective application of statutes, stating that "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.*

The Court in *Landgraf* reaffirmed the "presumption against statutory retroactivity," *id.* at 271, stating that a statute operates retroactively if it "attaches new legal consequences to events completed before its enactment." *Id.* at 270. Nonetheless, the Court also reaffirmed the rule that "in many situations, a court should 'apply the law in effect at the time it renders its decision,'" *id.* at 273 (quoting *Bradley,* 416 U.S. at 711), noting that in many situations, "application of new statutes passed after the events in suit is unquestionably proper." *Id.* These included, the Court said, statutes authorizing or affecting the propriety of prospective relief, those conferring or ousting jurisdiction, and those changing procedural rules. *Id.* at 273-75.

The Court established a two-part test to determine whether a statute may be applied retrospectively. If the legislature has clearly indicated the temporal reach of a statute, that must be given effect absent a constitutional prohibition. *Id.* at 280. If, however, the legislature has not clearly indicated the temporal reach of a statute, then a court must decide whether applying the statute would have a retroactive effect, that is, "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If there is such an impact, then the presumption against

retroactive application governs, "absent clear [legislative] intent favoring such a result." *Id.*

Illinois adopted the *Landgraf* test in *Commonwealth Edison*. *Commonwealth Edison,* 196 Ill. 2d at 39, 749 N.E.2d at 972. In *Caveney v. Bower,* 207 Ill. 2d 82, 797 N.E.2d 596 (2003), the Illinois Supreme Court said that "despite the analytical challenges typically posed by a phrase like 'retroactive impact,' application of the *Landgraf* approach in Illinois should prove uneventful." *Id.* at 91-92, 797 N.E.2d at 601. The reason is that in Illinois, "the legislature has clearly indicated the 'temporal reach' of *every* amended statute." *Id.* at 92, 797 N.E.2d at 601. Such is the case in Illinois because if the legislature does not expressly declare a statute's temporal reach in the enactment itself, the default rule of the so-called "statute on statutes," 5 ILCS 70/4, applies. *Id.* This provision, which the Illinois Supreme Court has referred to as the state's "general savings clause," *see People v. Glisson,* 202 Ill. 2d 499, 505, 782 N.E.2d 251, 255 (2002), reads as follows:

> 70/4 Rights, etc. saved; criminal cases; application of new law by consent
>
> No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act.

5 ILCS 70/4.

The first issue is whether 50 ILCS 70/4 applies to 745 ILCS 5/1.5 at all. This is a

difficult question, initially, because of the opacity of section four's phrasing. In particular, the section's first sentence is phrased in such a complex way that the idea of diagramming it[2] would be enough to make most high school composition teachers blanch. As best as we can parse that sentence, it appears to say that no new law shall be construed to repeal an existing or former law in any of the following ways:

- as to any offense committed against the former law;

- as to any act done, penalty incurred, right accrued, or claim arising under the former law; or

- to affect any offense committed against the former law, any act done under the former law, any penalty incurred under the former law, any right accrued under the former law, or any claim arising under the former law, before the new law takes effect.

The state's statutory immunity from suit and the abrogation of that immunity for ADA and ADEA cases set forth in 745 ILCS 5/1.5 do not fit neatly within the types of retroactive application barred by 5 ILCS 70/4. Age and disability discrimination would not be considered, in common parlance, to be "offense[s] committed" or "act[s] done" under the former law – the State Lawsuit Immunity Act – and an employee's claim challenging age or disability discrimination ordinarily would not be considered a "right accrued" or "claim arising" under the Immunity Act. The parties have not cited, and the Court has not found, any case – other than the three federal cases referenced earlier – addressing the application of section four's general savings clause to any Illinois statute that abrogates a preexisting statutory immunity from suit. And we respectfully note that neither *Holliday, Bottoms,* nor *Blalock* contains any analysis of the

---

[2] A lost art, we might add.

9

language of 5 ILCS 70/4 in applying it to 745 ILCS 5/1.5.[3]

For purposes of discussion, however, the Court is willing to assume that 5 ILCS 70/4 applies to an abrogation of statutory immunity from suit. The reason is that Illinois courts appear to consider section four generally to "forbid[ ] retroactive application of substantive changes to statutes." *Glisson,* 202 Ill. 2d at 507, 782 N.E.2d at 256, *quoted in Caveney,* 207 Ill. 2d at 92, 797 N.E.2d at 602. And not just to statutes: in *Foster Wheeler Energy Corp. v. LSP Equip., LLC,* 346 Ill. App. 3d 753, 759-60, 805 N.E.2d 688, 693 (2004), the court applied section four to preclude retroactive application of a newly-enacted statute that did not repeal or amend any previous statutory enactment, but rather modified the common law as interpreted by the Illinois courts.

Even if, however, 5 ILCS 70/4 applies to the abrogation of Illinois' sovereign immunity contained in 745 ILCS 5/1.5, section four sets forth an exception to its general rule against retrospective application of statutes: the "proceedings" after the new law takes effect are to conform to the law in effect at the time of the proceeding. *See* 5 ILCS 70/4. Based on this provision of 50 ILCS 70/4, the Illinois Supreme Court has stated that the statute "represents a clear legislative directive as to the temporal reach of statutory amendments and repeals: those that are procedural in nature may be applied retroactively, while those that are substantive may not." *Caveney,* 207 Ill. 2d at 92, 797 N.E.2d at 602; *see also Glisson,* 202 Ill. 2d at 507, 782

---

[3] *Bottoms* does not discuss the language of 50 ILCS 70/4. *See Bottoms,* 2004 WL 1403811, at * 3. *Blalock* does not mention the statute at all, but rather relies on *Bottoms*. *See Blalock,* 349 F. Supp. 2d at 1096 n.5. *Holliday* simply states that 5 ILCS 70/4 "prohibits retroactive application of substantive changes to statutes" and appears to assume, without discussion, that 745 ILCS 5/1.5 is a "substantive change." *Holliday,* 2005 WL 3312633, at *3 n.2.

N.E.2d at 256.

The issue, therefore, appears to be whether Illinois' abrogation of its immunity from suit for ADEA and ADA cases is considered to be a substantive enactment or a procedural one. As there is no Illinois law addressing this particular point, we look to *Landgraf* and its progeny for guidance. In *Landgraf,* the Supreme Court noted that parties have a "diminished reliance interest in matters of procedure," citing, among other cases, *Dobbert v. Florida,* 432 U.S. 282 (1977), where it held that the retroactive application of a procedural law that arguably made it easier to impose a death sentence did not violate the Constitution's Ex Post Facto Clause. *Landgraf,* 511 U.S. at 275 n.28.

One would have to strain somewhat to call Eleventh Amendment immunity a "procedural" doctrine strictly speaking. There is, however, authority suggesting that the Eleventh Amendment is a matter of federal court jurisdiction. *See Edelman v. Jordan,* 415 U.S. 651, 678 (1974).[4] In *Landgraf,* the Supreme Court indicated that retroactive application of statutes changing jurisdictional rules is appropriate, as such rules "usually 'take[ ] away no substantive right but simply change[ ] the tribunal that is to hear the case.'" *Id.* at 274 (quoting *Hallowell v. Commons,* 239 U.S. 506, 508 (1916) (brackets added)). "[B]ecause jurisdictional statutes 'speak to the power of the court rather than to the rights and obligations of the parties,'" the Court stated, *id.* at 274 (quoting *Republic Nat'l Bank of Miami v. United States,* 506 U.S. 80, 100 (1992) (Thomas, J., concurring)), application of a jurisdiction-creating or jurisdiction-ousting statute adopted after the events in suit is generally proper, "whether or not jurisdiction lay when

---

[4] We hasten to note, however, that more recently, the Supreme Court indicated that it had not determined whether the Eleventh Amendment is a jurisdictional rule. *See Wisc. Dep't of Corrections v. Schacht,* 524 U.S. 381, 391 (1998).

the underlying conduct occurred or when the suit was filed." *Id.* at 273-74.

Three years after *Landgraf,* however, the Supreme Court stated in *Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939 (1997), that a statute that creates jurisdiction where none previously existed – as contrasted with a statute that "'takes away no substantive right but simply *changes* the tribunal that is to hear the case,'" *id.* at 951 (quoting *Landgraf,* 511 U.S. at 274 (emphasis added)) – "speaks not just to the power of a particular court but to the substantive rights of the parties as well" and that such a statute, though phrased in jurisdictional terms, is subject to the *Landgraf* presumption against retroactivity. *Id.* It is at least conceivable that if *Hughes Aircraft* stated the controlling law, Illinois' abrogation of its statutory immunity from suit might be considered a "substantive" statutory amendment subject both to the *Landgraf* presumption and to 5 ILCS 70/4's rule against retroactive application of Illinois statutes.

A little less than two years ago, however, the Supreme Court addressed the issue of retroactivity with regard to an amendment to the Foreign Sovereign Immunities Act (FSIA) that eliminated the defense of sovereign immunity in cases involving expropriation of property in violation of principles of international law. *See Republic of Austria v. Altmann,* 541 U.S. 677 (2004). The Court held that the statutory amendment eliminating sovereign immunity could be applied retroactively to a suit based on conduct that took place before the amendment was adopted. It distinguished *Hughes Aircraft* by first noting that when a jurisdictional limitation "applies by its terms regardless of where the claim is brought, the limitation is inherently substantive." *Id.* at 695. The jurisdictional enactment at issue in *Hughes Aircraft* was part of the statute that created the underlying cause of action that formed the basis of the suit in that case; by contrast, the FSIA did not itself create any causes of action. *Id.* The same is true, of course, of

Illinois' State Lawsuit Immunity Act.

In *Altmann,* the Court recognized that the Foreign Sovereign Immunities Act "defies ... characterization" in the *Landgraf* substance / procedure dichotomy, and it concluded that the FSIA's characteristics rendered the *Landgraf* approach inconclusive. *Id.* at 694. As a result, the Court stated, the issue of retroactive application could be determined only by examining the statute at issue and the principles underlying the Court's retroactivity jurisprudence. *Id.* at 694-95. The Court stated that the presumption against retroactivity, "while not strictly confined to cases involving private rights, is most helpful in that context." *Id.* at 696 (citing *Landgraf,* 511 U.S. at 271 n.25 ("[T]he great majority of our decisions relying upon the antiretroactivity presumption have involved intervening statutes burdening private parties.")). The aim of the presumption, the Court stated, is to avoid unnecessary *post hoc* changes to legal rules upon which parties relied in shaping their primary conduct. According to the Court, however, "the principal purpose of foreign sovereign immunity has never been to permit foreign states and their instrumentalities to shape their conduct in reliance on the promise of future immunity from suit in the United States. Rather, such immunity reflects current political realities and relationships, and aims to give foreign states and their instrumentalities some *present* 'protection from the inconvenience of suit as a gesture of comity.'" *Id.* (quoting *Dole Food Co. v. Patrickson,* 538 U.S. 468, 479 (2003)). As Justice Breyer likewise stated in his concurring opinion, "the legal concept of sovereign immunity, as traditionally applied, is about a defendant's status at the time of suit, not about a defendant's conduct before the suit." *Altmann,* 541 U.S. at 708 (Breyer, J., concurring).

Eleventh Amendment immunity, a species of sovereign immunity, is likewise premised

upon considerations of comity among sovereigns, *see, e.g., Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 277 (1997) (referring to "[t]he Eleventh Amendment's background principles of federalism and comity"); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984) (referring to "the principles of federalism that inform Eleventh Amendment doctrine"), not upon the notion that states will shape their conduct based on their immunity from suit in federal court.  Thus under *Altmann,* a *Landgraf* analysis would not appear to preclude application of Illinois' immunity-abrogation statute, 745 ILCS 5/1.5, to cases involving conduct that predated its adoption.

The Court believes that 50 ILCS 70/4 likewise does not require that section 1.5's abrogation of immunity be applied only to suits arising from conduct postdating the adoption of section 1.5.  The Illinois courts' application of section 1.5 to statutory amendments or enactments appears to turn on the same substance / procedure distinction that animates the Supreme Court's *Landgraf* retroactivity jurisprudence.  Though an abrogation of sovereign immunity does not fit neatly into either category, the purpose underlying 5 ILCS 70/4 would not be served by using that statute to make the abrogation of immunity applicable only to suits based on conduct postdating the abrogation.  There can be no viable contention that Illinois state government and state agencies relied on immunity from suit in shaping their conduct with respect to invidious discrimination against state employees.  Since long before the adoption of 745 ILCS 5/1.5, the Illinois Human Rights Act's prohibition against age-based and disability-based discrimination against employees has applied to state governmental agencies like the ISP.  *See* 775 ILCS 5/2-102 (banning "any employer" from "unlawful discrimination"); *id.* 2-101(B)(1)(c) (defining "employer" to include state governmental agencies); *id.* 1-103(Q) (defining "unlawful

14

discrimination" as including discrimination based on age or "handicap").  The IHRA renders employers who violate its requirements subject to suit in state circuit court, *see id.* 10-102(A)(1) – and even if that particular provision somehow did not apply to state government employers, the state still would be subject to suit in the Illinois Court of Claims for an IHRA violation involving a government employee.  *See* 705 ILCS 505/8(a) (conferring Court of Claims with jurisdiction of "all claims against the State founded upon any law of the State of Illinois").  The IHRA's prohibitions are essentially the same as the parallel prohibitions found in the ADEA and ADA.

In short, the abrogation of state sovereign immunity for ADEA and ADA suits affects not the primary conduct of Illinois state governmental agencies as employers, or whether such agencies can be sued, but rather only where they can be sued.  As such, the abrogation is better classified as a procedural enactment that 5 ILCS 70/4 permits to be applied retrospectively, not a substantive alteration of law as to which section four generally prohibits retrospective application.

For these reasons, the Court denies the ISP's motion to dismiss Evoy's ADA and ADEA claims.

**2.      ADA and ADEA claims - conduct before July 22, 2004**

Both the ADA and ADEA require a plaintiff to exhaust administrative remedies before filing suit in court.  This includes, among other things, a requirement that the plaintiff file an administrative charge with the EEOC within 300 days of the allegedly unlawful employment practice.  *See, e.g., Flannery v. Recording Industry Ass'n of America,* 354 F.3d 632, 637 (7th Cir. 2004); 29 U.S.C. § 626(d) (ADEA); 42 U.S.C. § 12117(a) (ADA; adopting procedures under Title VII); 42 U.S.C. § 2000e-5(e)(1) (Title VII).

Some of the events identified by Evoy in his complaint are said to have taken place more than 300 days before he filed his EEOC charge on May 18, 2005. Defendants seek to dismiss any claims based on conduct outside the 300 day limit. In *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002), the Supreme Court held that a discrete discriminatory act occurs on the day it happens and that discrete discriminatory acts are not actionable if time-barred, even if they are related to acts alleged in timely filed charges. Under *Morgan,* it is likely that defendants will be able to persuade the Court that Evoy's claims for relief under the ADA and ADEA may be premised only upon acts that occurred within the 300 day period before he filed his EEOC charge. *See generally, Tinner v. United Ins. Co. of America,* 308 F.3d 697, 707 (7th Cir. 2002). Even if that turns out to be the case, however, Evoy may well be permitted to offer the earlier events as background evidence to support a claim based on acts within the 300 day period. *See Morgan,* 536 U.S. at 113. In addition, at this point in the case, the Court is determining only the adequacy of Evoy's pleading. For these reasons, the Court does not believe it appropriate to bar Evoy from attempting to show that he has a way around *Morgan* and therefore declines to limit his claim at this juncture.[5] Defendants' arguments in this regard are more appropriately raised, if at all, as part of a motion for summary judgment.

3.      **Title VII claim - exhaustion of remedies**

Evoy alleges in his complaint that his initial internal complaint of discrimination, made in October 2002, included allegations that he was being treated differently based on his race, gender, and disability. As discussed earlier, in his EEOC charge, Evoy made reference to his

---

[5] For this reason, the Court need not deal with Evoy's alternative argument that defendants should be equitably estopped from insisting on the 300 day limitation.

2002 internal complaint. He also checked off boxes for "retaliation" as well as age and disability

discrimination; the "retaliation" box did not limit the claim of retaliation to one based on earlier

complaints of age and disability discrimination. In the conclusion of the narrative portion of the

charge, however, Evoy stated that he was alleging age and disability discrimination as well as

retaliation in violation of the ADA and ADEA; he made no mention of retaliation in violation of

Title VII, the type of violation that would correspond to retaliation for making a charge of race

and/or gender discrimination.

Defendants argue that Evoy failed to exhaust administrative remedies with respect to his

Title VII retaliation charge. The check-off portion of the charge, however, clearly includes a

claim of retaliation and does not limit this to ADA or ADEA-based retaliation. One comes to

that limitation only by reading the charge narrowly, specifically focusing on the last two

sentences, which refer to the ADA and ADEA but do not mention Title VII. Given the standards

that govern our consideration of a motion to dismiss for failure to state a claim, however, it

would be inappropriate to read the charge – which is part of Evoy's complaint – that narrowly.

In addition, in the EEOC charge Evoy made specific reference to his 2002 internal

discrimination complaint, which included allegations of race and gender discrimination (though

those underlying allegations are not described in the EEOC charge). As Evoy argues in response

to defendants' motion, a plaintiff may pursue a claim not expressly identified in his EEOC charge

if the allegations fall within the scope of the EEOC charge, which in turn depends on whether the

allegations are like or reasonably related to those in the charge, and whether the claim at issue

reasonably could have developed from the EEOC's investigation of the charges specifically

made. *See, e.g., Cheek v. Peabody Coal Co.,* 97 F.3d 200, 202 (7th Cir. 1996). Given the

standard for dismissing a claim under Rule 12(b)(6), the Court cannot say that Evoy will be unable to meet the requirements of *Cheek*. The retaliation allegation in Evoy's EEOC charge was not specifically limited to a claim under the ADA and ADEA, and Evoy's specific reference in the charge to his 2002 internal complaint against Stallworth likely would have led to an investigation of retaliation for making each of the allegations in that complaint – including discrimination based on race as well as disability and age. When, as in this case, charges are "so related and intertwined in time, people, and substance ... to ignore that relationship for a strict and technical application of the rule [requiring exhaustion] would subvert the liberal remedial purposes" of Title VII. *Sitar v. Ind. Dep't of Transp.,* 344 F.3d 720, 726 (7th Cir. 2003).

**4.      ADA, ADEA, and Title VII claims - Stallworth as defendant**

The Court agrees with Stallworth that he is not a proper defendant on Evoy's claims under the ADA, ADEA, and Title VII, each of which limits relief to the plaintiff's "employer" as that term is defined in those statutes. *See, e.g., Silk v. City of Chicago,* 194 F.3d 788, 797 n.5 (7th Cir. 1999). The Court therefore dismisses Stallworth as a defendant from Counts 1, 2, and 4. Evoy says that his complaint would support a claim against Stallworth under 42 U.S.C. § 1983 for retaliating against Evoy in violation of his rights under the First Amendment. Because no mention of the First Amendment or § 1983 appears in Evoy's complaint, however, the Court believes the better course is to allow Evoy to amend his complaint if he wishes to assert a claim of this type against Stallworth as an individual.

In his response to defendants' motion, Evoy also contended that in the event the Court determined that his ADA and ADEA claims against the ISP were barred by the Eleventh Amendment, he would still be able to seek injunctive relief against Stallworth under the ADA

18

and ADEA under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908). In view of the Court's decision not to dismiss the ADA and ADEA claims on Eleventh Amendment grounds, it is unclear whether Evoy intends to pursue his claims for injunctive relief against Stallworth under *Ex parte Young.* If so, however, the Court agrees with Evoy that he can pursue, at least for now, claims for injunctive relief under those statutes.[6] As the Court recently stated in another case:

> Under the rule announced in *Ex Parte Young,* 209 U.S. 123 (1908), plaintiffs may sue state officials in their official capacities for prospective relief to enjoin ongoing violations of their federal rights, notwithstanding the state's Eleventh Amendment immunity. *See, e.g., Bruggeman* [*ex rel. Bruggeman v. Blagojevich,* 324 F.3d 906, 912 (7th Cir. 2003)]. Doe states that he was terminated because of his disability, that he continues to suffer a violation of the ADA so long as his dismissal continues, and that he seeks reinstatement and related injunctive relief to cure this violation. In *Carten v. Kent State Univ.,* 282 F.3d 391, 395-97 (6th Cir. 2002), the Sixth Circuit held that a dismissed student could bring a suit under *Ex Parte Young* for reinstatement after he was expelled in violation of the ADA. The court stated that "claims for reinstatement state a violation that continues during the period the plaintiff is excluded from the benefits to which he is entitled." *See id.* at 396 (citing *Elliott v. Hinds,* 786 F.2d 298, 301 (7th Cir.1985)). The Seventh Circuit recently held that when a plaintiff claims that he has been dismissed or demoted in violation of his procedural due process rights, he has not alleged an ongoing violation. *Sonnleitner v. York,* 304 F.3d 704, 718 (7th Cir. 2002). Specifically, the court concluded that "the violation was not the demotion as such, but, instead, the fact that the demotion occurred without an adequate opportunity to be heard." *Id.* The court therefore determined that the plaintiff could not use his demotion to establish an ongoing violation of his procedural due process rights. *Id.* The Seventh Circuit has, however, continued to indicate that when an individual's termination or dismissal directly violates a federal constitutional or statutory guarantee, he may maintain a suit for reinstatement. *Levenstein v. Salafsky,* 414 F .3d 767, 772 (7th Cir. 2005); *Hernandez v. O'Malley,* 98 F.3d 293, 297 (7th Cir. 1996); *Kashani v. Purdue Univ.,* 813 F.2d 843, 848 (7th Cir. 1987). The Court therefore adopts the reasoning of the Sixth Circuit in *Carten,* concluding that when a student like Doe alleges that he was dismissed in violation of the ADA, he can, consistent with the Eleventh Amendment, bring a claim for reinstatement against the responsible official under *Ex Parte Young.*

---

[6] We note that defendants did not reply to Evoy's *Ex parte Young* argument.

*Doe v. Bd. of Trustees of Univ. of Ill.,* ___ F. Supp. 2d ___, 2006 WL 1084284, at *9 (N.D. Ill. Apr. 20, 2006). Because Evoy says that he has been suspended and recommended for termination, he, like the plaintiff in *Doe,* would appear to be entitled to pursue a claim for injunctive relief. The reasoning that the Court employed with regard to Doe's claim under Title II of the ADA would appear to apply to Evoy's ADEA claim as well as claim under Title I of the ADA.

5.    **IIED claim - preemption**

Evoy's claim for intentional infliction of emotional distress is not preempted by the Illinois Human Rights Act because it is premised on a legal duty that is distinct from the duty imposed by the IHRA. The Seventh Circuit reached this conclusion just a few weeks ago, in a decision in which it specifically approved this Court's earlier analysis of the point in *Temores v. S.G. Cowen,* 289 F. Supp. 2d 996, 1006-07 (N.D. Ill. 2003). *See Naeem v. McKesson Drug Co.,* ___ F.3d ___, 2006 WL 932354, at *7 & n.4 (7th Cir. Apr. 12, 2006).[7]

6.    **Damage claims**

Evoy concedes that ISP is exempt from assessment of punitive damages on Evoy's claims under the ADA and Title VII, *see* 42 U.S.C. § 1981a(b)(1); that neither the ADEA nor the FMLA provide for recovery of punitive damages or compensation for emotional distress, *see* 29 U.S.C. §§ 626(b) & 2617(a)(1)(A); and that punitive damages and compensation for emotional distress are not available on a claim of retaliation under the ADA. *See Kramer v. Banc of America*

_____

    [7] Defendants also argue that the IIED claim should be dismissed to the extent it is based on emotional distress inflicted outside the two-year limitations period under Illinois law for filing such claims. Because the IIED claim has survived defendants' only challenge against the claim in its entirety, the Court believes that defendants' argument regarding the metes and bounds of the claim is better addressed, if at all, at the time of summary judgment and/or trial.

*Securities, LLC,* 355 F.3d 961, 965 (7th Cir. 2004).  Those particular requests for damages are therefore stricken.

## Conclusion

For the reasons stated above, the Court grants defendants' motion to dismiss in part and denies it in part [docket no. 18].  Counts 1, 2, and 4 of plaintiff's complaint, to the extent they seek damages as opposed to injunctive relief, are dismissed as to defendant Stallworth for failure to state a claim, and plaintiff's requests for punitive damages against defendant Illinois State Police under Counts 1 and 4, his requests for compensatory and emotional distress damages under Counts 2 and 3, and his requests for compensatory and punitive damages on the claim of retaliation contained in Count 1 are stricken.  Defendants' motion is otherwise denied.  Plaintiff is granted leave to file an amended complaint on or before May 10, 2006 to assert, if he wishes, a claim under 42 U.S.C. § 1983 for violation of his First Amendment rights.  The case remains set for a status hearing on May 11, 2006 at 9:30 a.m.


Date:   May 3, 2006

_____
MATTHEW F. KENNELLY
United States District Judge